## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

VINCENT P. FALCI,                    :
                                     :
            Petitioner,              :          Civ. No. 20-8962 (RK)
                                     :
      v.                             :
                                     :
UNITED STATES OF AMERICA,            :          **OPINION**
                                     :
            Respondent.              :
                                     :

**KIRSCH, District Judge**

     **THIS MATTER** comes before the Court upon a Motion to Vacate, Set Aside or Correct his Sentence Pursuant to 28 U.S.C. § 2255.  *See* ECF No. 1. In his Motion, Petitioner initially proceeded *pro se*, and asserted two claims: Claim I, Petitioner stated his criminal defense trial counsel ("Trial Counsel") was ineffective by failing to advise him of the elements of the charged offense required for conviction; and Claim II, Petitioner stated his Trial Counsel failed to provide any defense to the wire fraud counts. *Id.* at 4-5. On January 2, 2024, the Court issued a Memorandum & Order which ordered an evidentiary hearing on Claim I, appointed legal counsel to represent him at said hearing, and reserved ruling on Claim II. On January 16, 2024, the Court appointed Michael A. Armstrong, Esq. to represent Petitioner. On February 29, 2024, the Court conducted an evidentiary hearing at which Petitioner and his Trial Counsel, John Yauch, Esq., an Assistant Public Defender, both testified. Mr. Armstrong appeared on behalf of Petitioner and Matthew Specht, an Assistant U.S. Attorney for the District of New Jersey appeared for the Respondent, United States of America.

## I.      INTRODUCTION

Petitioner, Vincent P. Falci ("Petitioner" or "Falci"), is a federal prisoner currently incarcerated at F.C.I. Fort Dix in Fort Dix, New Jersey. For the following reasons, Petitioner's § 2255 motion is denied and a certificate of appealability shall not issue.

## II.     FACTUAL AND PROCDURAL BACKGROUND

From approximately 2006-2016, Petitioner defrauded investors of millions of dollars through a Ponzi scheme. Petitioner told investors he would safely invest their money in two investment funds he controlled named the Saber and Vicor Funds. *See* Presentence Investigation Report ("PSR") ¶ 14. Petitioner falsely represented to investors that the funds were growing year after year when Petitioner was actually diverting investor money for his own personal use. *See id.* ¶ 14-15. When investors requested a disbursement of their invested money, Petitioner would use newly invested funds to make those redemptions. *See id.* ¶ 16.

Petitioner began to raise money for the Saber Fund in 2001. *See id.* ¶ 12. Petitioner misrepresented to investors that the Saber Fund was invested in 85-90% tax lien certificates that were growing steadily over time. *See id.* ¶ 17. Petitioner further misrepresented to investors that the fund's performance handily beat indices and that the fund's model made it virtually impossible not to generate positive returns year after year. *See id.* In reliance on those misrepresentations, investors gave Petitioner more money to invest for them on their behalf. Petitioner raised at least $15,000,000 from investors for the Saber Fund. *See id.*

Petitioner diverted money to himself and to riskier investments. *See id.* ¶ 18. For example, Petitioner paid himself and his family approximately $1,000,000 from the money invested in the Saber Fund from 2006-2009. *See id.* Petitioner also transferred money from the Saber Fund to brokerage accounts. *See id.* Those accounts lost money though through day trading and other

investments. *See id.* Petitioner also transferred $3,000,000 from the Saber Fund to another entity he controlled to use that money to buy and rehabilitate residential properties. *See id.* Most of those investments also lost money. *See id.*

In 2011, Petitioner began soliciting investments for the Vicor Fund. *See id.* ¶ 20. Petitioner told those investors he was an experienced financial advisor, particularly in the area of tax liens. *See id.* He touted his experience as the founder and operator of the Saber Fund, which he falsely told investors was primarily invested in tax liens. *See id.* Petitioner raised millions of dollars for the Vicor Fund, from which, in turn, he diverted a substantial portion for he and his family's own personal use. *See id* at ¶¶ 20, 25. For example, from January 2015 to May 2016, Petitioner distributed over $500,000 of investor money to himself and his family. *See id.*

Petitioner was arrested on December 16, 2016. He was charged by way of complaint with two counts of wire fraud in violation of Title 18, United States Code, Section 1342 and Section 2; and one count of securities fraud in violation Title 15, United States Code, Sections 78j(b) and 78ff. *See* Crim. No. 17-228 ECF No. 1 at 2-3.[1] In January 2017, Mr. John H. Yauch, Esq., was assigned to Petitioner as his Trial Counsel. *See* Crim. No. 17-228 ECF No. 11.

On March 6, 2017, the government provided a written plea agreement to Petitioner. *See* ECF No. 9-1. The plea agreement stated that the government would accept a plea of guilty to one count of securities fraud, in exchange for a recommended sentence of eighty-four months in prison. Petitioner rejected this plea offer.

On June 18, 2017, a federal grand jury indicted Petitioner on one count of securities fraud. *See* Crim. No. 17-228 ECF No. 14.

---

[1] References to documents found within Petitioner's criminal proceedings are explicitly cited with that criminal action number in this opinion. Unless otherwise indicated, other ECF number citations are from this civil action.

On August 9, 2018, the government again communicated to Petitioner a written plea offer. *See* ECF No. 9-2.  This plea offer, like the first, called for Petitioner to plead guilty to one count of securities fraud, with the identical recommended sentence of eighty-four-months. Petitioner again rejected the plea offer.

On August 23, 2018, a federal grand jury returned a superseding indictment against Petitioner.  *See* Crim. No. 17-228 ECF No. 43.  This superseding indictment charged Petitioner with one count of securities fraud and three counts of wire fraud.  *See* Crim. No. 17-228 ECF No. 43.

The trial court conducted a hearing pursuant to *Missouri v. Frye*, 566 U.S. 134 (2012) to ensure that Petitioner understood the contents of the plea offers and that he had discussed them with his attorney before rejecting them prior to trial.  The following colloquy took place between Petitioner, the Court,[2] and counsel at this pretrial hearing:

> [THE COURT]:  Do you remember, Mr. Falci, receiving a proposed plea agreement dated March 6th, 2017?
> [FALCI]:  Yes, Your Honor.
> . . . .
> [THE COURT]:  All right, so you recall receiving a copy of the proposed plea agreement and you understood that the plea agreement would be in lieu of the trial?
> [FALCI]:  Yes, Your Honor.
> [THE COURT]:  In other words, you plead or you go to trial.  Those are the choices.
> [FALCI]:  Yes, Your Honor.
> [THE COURT]:  Now, did you discuss that plea agreement with your lawyer?
> [FALCI]:  I did.
> [THE COURT]:  And did the plea agreement have an expiration on it?  In other words, you have to plead by a certain date or thus and such if you recall?
> [FALCI]:  I don't recall specifically.
> [THE COURT]:  All right.  But did you have enough time to discuss it?
> [FALCI]:  I believe so.

---

[2] The Honorable Anne. E. Thompson presided over Petitioner's criminal proceedings.

[THE COURT]:  And did you decide to accept the plea agreement or to go to trial?

[FALCI]:  I decided not to accept the plea agreement.

[THE COURT]:  I see.  And you realized that the alternative would be to go to trial?

[FALCI]:  I did.

[THE COURT]:  Now, did you understand that whether or not to accept the plea agreement offered by the Government is entirely your decision, not your lawyer's decision?  He is an experienced professional who has been assigned to you to help you navigate the legal system but he's not the one who's going to suffer the punishment one way or the other.  And, therefore, it's not his welfare that's on the line.  It's yours.  And, therefore, whatever he says is advisory but the decision is yours, not his.

[FALCI]:  I understand that, Your Honor.

[THE COURT]:  Now, I understand there was another plea agreement dated August 9th, 2018.

[FALCI]:  Yes.

[THE COURT]:  Do you remember that?

[FALCI]:  Yes.

[THE COURT]:  And again, did you have a chance to discuss it with your lawyer?

[FALCI]:  I did.

[THE COURT]:  And did you appreciate the fact that this was something that your lawyer could advise you on but it really was going to be your decision, not his?  You understood that?

[FALCI]:  I understood it was my decision, Your Honor.

[THE COURT]:  And you understood that if you took the plea agreement, there would be no trial?

[FALCI]:  I did.

[THE COURT]:  But if you went to trial, you might end up with a result much worse than might have happened in terms of your exposure in the plea agreement?

[FALCI]:  I understand that.

[THE COURT]:  All right.  And did you understand that nobody, nobody, nobody can guarantee you what 12 jurors randomly selected here will ultimately decide?

[FALCI]:  I understand that.

[THE COURT]:  And that this is a risk and it's yours to make and only you in the end will be the person to experience the consequences of the decision.  Did you understand that?

[FALCI]:  Yes.

THE COURT:  Mr. Herring [Government Assistant United States Attorney], are there additional questions . . . with regard to this subject -- . . . . the *Frye* hearing.

MR. HERRING:  No, Your Honor.

> THE COURT: All right, thank you very much. Mr. Yauch, maybe if you'd like to elaborate? Is there anything you'd like to seal this proceeding with?
>
> MR. YAUCH: Judge, I can just inform the Court that I've had extensive discussions with the Government regarding a resolution of this matter and I've communicated with my client, all of those possible ways that this case could have been resolved short of trial and it's my client's decision to elect to proceed to trial.
>
> THE COURT: With all of the details that a trial encompasses, witnesses who may testify one way or may testify another way, jurors who are ultimately strangers, who knows what is in their heads, there are all of these factors which in any trial lawyers have to consider in discussing with their clients what a trial encompasses. You've done that with your client?
>
> MR. YAUCH: Absolutely.
>
> THE COURT: All right, thank you very much. If there's nothing further that either side would like said or questioned about, I'm satisfied. Thank you.

ECF No. 9-3 at 6-10.

Trial Counsel filed pre-trial motions on behalf of Petitioner. After they were denied, Petitioner's trial commenced in December 2018. The government presented several witnesses. The defense presented no witnesses, but Trial Counsel cross-examined the government's witnesses, moved for a judgment of acquittal, presented an opening statement on behalf of Petitioner, and gave a closing argument. The jury returned a verdict of guilty on all four counts of the superseding indictment. *See* Crim. No. 17-228 ECF No. 83. Petitioner was ultimately sentenced to 180 months imprisonment. *See id.* ECF No. 95. Petitioner did not file a direct appeal.

Subsequently, Petitioner filed the instant § 2255 motion. *See* ECF No. 1. Petitioner raises two claims in his § 2255 motion. In Claim I, Petitioner argues that Mr. Yauch was ineffective during the plea process when he failed to notify Petitioner of the elements that the government was required to prove for a conviction on the securities fraud charge. *See* ECF No. 1 at 4. More specifically, Petitioner asserts Mr. Yauch improperly led him to believe that the government needed to prove motive to obtain a securities fraud conviction. Had he been properly informed of

the securities fraud elements, Petitioner claims he would have accepted the plea offer.  In Claim II, Petitioner argues Mr. Yauch provided ineffective assistance at trial by failing to provide a defense on the three wire fraud charges.  *See id.* at 5.  The government filed a response in opposition to Petitioner's § 2255 motion.  *See* ECF No. 9.  Petitioner filed a reply brief in support of his § 2255 motion.  *See* ECF No. 12.  As stated, on February 29, 2024, the Court conducted an evidentiary hearing on Claim I.  Both Petitioner and Mr. Yauch testified. The court will now adjudicate Claim I and Claim II.

### III.    LEGAL STANDARD

A motion to vacate, set aside or correct a sentence of a person in federal custody pursuant to 28 U.S.C. § 2255 entitles a prisoner to relief if "the court finds . . . [t]here has been such a denial or infringement of the constitutional rights of the prisoner as to render judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b).  "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'"  *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)) (other citation omitted).  A court "is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'"  *Id.* at 545-46 (quoting *Forte*, 865 F.2d at 62).  The Third Circuit has stated that this standard creates a "'reasonably low threshold for habeas petitioners to meet.'"  *Id.* at 546 (quoting *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (quoting *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001))).  Accordingly, a court abuses its discretion "if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief."  *Id.* (citing *McCoy*, 410

F.3d at 134).  The Court ultimately determined that Claim I necessitated an evidentiary hearing but that Claim II did not.

## IV.   DISCUSSION

Both of Petitioner's claims contend that Trial Counsel provided ineffective assistance of counsel.  The Sixth Amendment guarantees effective assistance of counsel.  In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court articulated a two-prong test for demonstrating when counsel is deemed ineffective.  First, a petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim considering all circumstances) (citation omitted).  A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  *See Strickland*, 466 U.S. at 690.  Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential."  *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.  The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable."  *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).  If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that

reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).

The second prong of the *Strickland* test requires a petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice is found when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

1. Claim I – Ineffective Assistance During Plea Proceedings

In Claim I, Petitioner argues that Mr. Yauch was ineffective by failing to properly explain to Petitioner the elements the government needed to prove to convict him of securities fraud, most notably, whether Petitioner's motive was an element the government needed to prove for a

conviction.   This purported failure by Mr. Yauch caused Petitioner to misapprehend the government's burden at trial and led Petitioner to reject the government's plea offers.

Petitioner's Sixth Amendment right to counsel extends to the plea-bargaining process.  *See Lafler v. Cooper*, 566 U.S. 156, 162 (2012).  "When addressing a guilty plea, counsel is required to give a defendant enough information "'to make a reasonably informed decision whether to accept a plea offer.'"" *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (quoting *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992))).  "A defendant who rejects a guilty plea and receives a more severe sentence after trial makes a claim of ineffective assistance when 'he alleges that the advice he received was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer.'" *Morris v. Adm'r New Jersey State Prison*, 770 F. App'x 601, 605 (3d Cir. 2019) (quoting *Day*, 969 F.2d at 43).  In the context of rejecting a plea, a petitioner must show that "'but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea' and the resulting sentence would have been lower." *Shotts*, 724 F.3d at 376 (citation omitted).  However, the Third Circuit has cautioned that courts should be "wary" of claims that trial counsel did not adequately advise a defendant about the benefits and consequences of a plea offer because "defendants will always want the best of both worlds: the chance at acquittal at trial, yet the chance to plead guilty if the trial defense fails." *Day*, 969 F.2d at 46 n.9.

In Claim I, Petitioner asserted as follows:

> Mr. Yauch, allowed Petitioner to jump in with both feet without telling him what was lurking under the surface.  Indeed, Mr. Yauch told Petitioner going to trial was a bad idea, but when Petitioner repeatedly professed that he "didn't steal any money," and maintained that he had his investors best interest in mind throughout, Mr. Yauch should have explained to Petitioner that

those factors did not matter. Not one bit. Neither theft, nor motive are elements of the offense for which Petitioner was charged. Instead, counsel told him if that were the case, "he couldn't plead guilty." Thus, Petitioner proceeded to trial misunderstanding what the government needed to prove to convict him . . . .

If Petitioner had been properly informed, he would have graciously accepted the government's eighty-four month plea offer, rather than proceed to trial . . . .

Petitioner's counsel knew about Petitioner's misconception of the elements the government needed to prove, but never corrected Petitioner nor ever explained what the government was required to prove. Indeed, Petitioner's assertion to counsel time-and-time again was that he a) didn't steal any money and b) he had pure intentions to turn a profit for his investors. Counsel never explained to Petitioner that neither of those were elements the government would be required to prove. Nor did he ever explain to Petitioner what the government would have to prove. Counsel merely stated that the government had to prove criminal intent, but Petitioner thought that meant intent to steal the investor money. Counsel never even used the word "element," and beyond mentioning that the government had to prove criminal intent, never elaborated further on the burden of proof. Petitioner was adamant with Counsel that the government could not prove he intended to steal the investor's money. He believed the only thing he was "guilty" of was choosing investments that decreased in value rather than increased. Mr. Yauch responded by telling Petitioner that if that were the case, then Petitioner "could not plead guilty." It is unclear from the record if defense counsel knew the correct elements required for conviction under §§ 78j(b) and 78ff.

ECF No. 1-2 at 2, 6.

Respondent opposed Claim I arguing that Petitioner failed to show that counsel's performance fell below an objective standard of reasonableness and/or that Petitioner failed to show prejudice. Among the exhibits that Respondent included was a declaration from Mr. Yauch. *See* ECF No. 9-6. In that declaration, Mr. Yauch stated that he thoroughly explained the elements for each charge and at no time told Petitioner that the government needed to prove motive. *See id.* at 2.

The Court ultimately determined that an evidentiary hearing was warranted on Claim I. *See* ECF No. 17. Indeed, a final decision on Claim I could have potentially involved (as it does in this case) making a credibility determination between Petitioner's and Mr. Yauch's versions of events. Both Petitioner and Mr. Yauch testified at the February 29, 2024 evidentiary hearing. A brief recitation of their testimony at that hearing is described *infra.*

i.    *Petitioner's Testimony*

Petitioner testified at the hearing. He presented himself, as his Trial Counsel described, as an amiable, likable individual. He was polite and conversational, and answered the questions posed to him without anger or defensiveness. Notwithstanding, while he spoke in a measured, non-confrontational tone, it is clear that some of his responses, particularly on the critical issues before the court, strained the bounds of credulity. The court does not find that Petitioner intentionally testified falsely or tried to mislead the court but rather, in light of the passage of time and the stress of being under federal charges, it is the court's conclusion that he failed to appreciate the information and advice that his very experienced Trial Counsel provided to him over the span of significant time and many face-to-face meetings.

Petitioner testified that this case was the first time he had been arrested. *See* Hr'g Tr. at 4-5, Feb. 29, 2024. He stated that he first met his assigned Trial Counsel in January of 2017, and the court notes that the trial was conducted in December of 2018, almost two years after their first meeting. *Id.* at 5. Petitioner, on cross-examination, admitted that he was arrested in December of 2016 on a complaint charging him with wire fraud and securities fraud, and that in March of 2017, the government presented him with the first plea agreement wherein he would agree to plead guilty to one count of securities fraud, which he rejected. *Id.* at 12. He admitted that, in June of 2017, the was indicted by the grand jury to a count of securities fraud, and that in August of 2018, he rejected

a second plea offer. *Id.* at 12-13. He acknowledged that a superseding indictment charged him with one count of securities fraud and three counts of wire fraud, and he testified under oath, that he understood that the result of a trial may well be worse for him than the terms contemplated by the plea agreement. *Id.* at 13.

He acknowledged that Trial Counsel explained the charges brought against him, although he seemed to qualify the acknowledgement by adding "on a limited basis," thereafter. *Id.* at 5-6. Despite their "several meetings," Petitioner testified that he never heard the term "elements of the offense" at any point, and that Trial Counsel never reviewed the elements of the charge of securities fraud with him. Id. at 6-8. Without explaining the basis for this supposition, Petitioner claimed as follows: "I was under the impression that they simply had to prove that I stole money." Id. at 6. Now, years later, after learning the elements of securities fraud, he realizes that he, in fact, was guilty and seeks to accept the plea offer which was tendered to him, twice, and rejected both times. *Id.* at 18.

Petitioner, however, did admit that Trial Counsel did review the plea offer with him, and that his lawyer advised him that he was exposed to a potential twenty year term in federal prison on the charge of securities fraud. *Id.* at 8-9. Remarkably and implausibly, Petitioner denied that Trial Counsel failed to review or discuss the application of the U.S. Sentencing Guidelines, and denied so much as seeing a Sentencing Guidelines' manual over the course of his meetings with Trial Counsel. *Id.* at 9-10.

ii.    *Mr. Yauch's Testimony*

Mr. Yauch confirmed he was assigned to represent Petitioner "in the early stages" of the case. *Id.* at 21. Throughout his testimony, Trial Counsel did not exhibit, verbally or in body language, any animus regarding the Petitioner. To the contrary, throughout his testimony, he

repeatedly referred to Petitioner as "Vinnie," and described him as not "the typical white-collar greedy bastard. He was – he was a good guy. He was a good decent, guy." *Id.* at 27.

Mr. Yauch testified that he has been a criminal defense lawyer "[f]or over thirty years." *Id.* at 19.  He has represented "hundreds, if not thousands" of criminal defendants. *See id.* at 20. Mr. Yauch was appointed to this case to represent Petitioner "in its early stages." *Id.* at 21.  Mr. Yauch consulted with Petitioner "many times." *Id.*  Mr. Yauch testified about the volumes of discovery in this case as the purported fraud took place over a ten-year period. *See id.* at 21-22. The discovery included "financial statements, all the different entities involved . . . bank records" and encompassed "thousands and thousands of pages[.]" *Id.* at 22.

Mr. Yauch then explained his defense team.  "There was an investigator assigned to the case; there was a paralegal assigned to the case; there was another attorney assigned to [the] case." *Id.*  Both Mr. Yauch and the investigator spoke to many witnesses pre-trial. *See id.* In addition, he stated that the defense had retained "several experts in connection with the case, mostly on a consultant basis." *Id.*

Mr. Yauch filed several pretrial motions, but, after they were denied, he had "numerous discussions" with Petitioner about his options. *See id.* at 23.  These discussions occurred mostly in person at Mr. Yauch's Newark, New Jersey office. *See id.*  During these discussions, Mr. Yauch testified that "I made it plain to Mr. Falci that the evidence was overwhelming, and it was a terrible case to take to trial, and I begged him, I literally begged him, to not take this case to trial, given what could happen after a trial and a likely guilty verdict." *Id.* at 24.  Indeed, Mr. Yauch testified that the evidence against Petitioner was "suffocating." *Id.*

Mr. Yauch then testified that he went over what possible sentences Petitioner faced at trial if convicted.  Mr. Yauch testified that, in anticipation of his testimony, he reviewed his notes which

confirmed that "on several occasions" he advised "Vinnie," the Petitioner, that his exposure under the Sentencing Guidelines was 262-327 months and told him "you don't want to be in that position. The proofs are very strong." *See id.* at 25. Indeed, Mr. Yauch stated that the more witnesses he spoke to during his investigation, the worse the case got as it related to Petitioner's guilt. *See id.* at 25. He testified: "Every stone we unturned in the case didn't make the case any better for us. It only made it worse." *Id.*

Mr. Yauch then testified about his conversations with Petitioner about the proofs the government would need to show at trial. Mr. Yauch stated he had "many . . . specific discussions" with Petitioner about the proofs the government would need to show and the likely proofs that would be presented by the government. *See id.* at 24, 25. Mr. Yauch was then questioned at the evidentiary hearing whether motive was an element of any of the crimes for which Petitioner was charged. *See id.* at 26. Mr. Yauch expressly testified that he never advised Petitioner that motive was an element the government needed to prove for a conviction, but that the government "would likely" present evidence of motive, which included evidence of money that he and his family received, and that "he was living a good life for a couple years." *Id.* at 26-27. Indeed, he further noted that there was never any time that Petitioner indicated to him that Petitioner believed motive was an element of securities fraud. *See id.* at 28-29. Most problematic, according to Trial Counsel, were the proofs which "centered around all the monies that these investors put into his scheme and all of the ways that he disguised the movement of monies and put together this scheme to defraud." *Id.* at 27.

Mr. Yauch was then questioned about the jury instructions at trial. He expressly stated that he did not ask that motive be included as an element of the charges because "motive is not an element of the intent to defraud." *See id.* at 28.

After the government completed its direct examination of Mr. Yauch, the Court then asked

Mr. Yauch several questions.  First, the Court inquired of Mr. Yauch how he reviewed the specific

elements of securities fraud with Petitioner.  He responded as follows:

> Well, most of the time it was done generally.  We would describe –
> I mean, in the indictment itself, we would go through the indictment,
> because, of course, in order to plead not guilty at the arraignment,
> he had to understand the nature of the charge against him.  So we
> would review it then.
>
> Then, as I got up to speed and more comfortable with the case, we
> would sit down and I would review with him, look, here's what the
> government is going to do to prove their case. Here are the elements.
> And the crux of the defense, with all the charges, was – because of
> the paper trail proved all the elements.  The only thing that was in
> question was the intent to defraud.   So we had substantial
> discussions regarding the intent – the intent to defraud and how that
> element would be proved, and how it would be proved, in my
> estimation, with the – the mountain of evidence the documentary
> evidence regarding the different entities that were involved and
> created by [Falci] in this scheme to defraud, and the movement of
> monies amongst these different entities.   And it was absolutely
> suffocating in terms of, like I said, the – the volume of evidence and
> proof, and we had discussions regarding that.

*See id.* at 31-32.  The Court then concluded its colloquy with Mr. Yauch by inquiring whether Mr.

Yauch had educated himself about the elements of a securities fraud charge and whether he

reviewed those elements with Petitioner.  *See id.* at 33.  Mr. Yauch stated that he was certain before

the *Frye* hearing that he educated himself on the securities fraud elements and was "certain" that

he reviewed those elements with Petitioner.  *See id.*

iii.     *Analysis*

The testimony of Petitioner and Trial Counsel were consistent on a number of issues. For

example, it was clear to the court that Petitioner and Trial Counsel enjoyed a productive and open

attorney-client relationship, built over a substantial period of time, and over the course of many

face-to-face meetings. As stated, Trial Counsel had positive feelings for Petitioner and it is clear

16

to the Court that he was very devoted to providing Petitioner with the best legal advise possible under the circumstances. Both acknowledged that Trial Counsel reviewed the charges with Petitioner, and the plea agreements tendered by the government, and that Petitioner was aware of the potential twenty-year sentence to which he was exposed if he was convicted of securities fraud. Petitioner and Trial Counsel, however, differ on whether Trial Counsel reviewed the elements of the offense of securities fraud with him, and whether motive was an element for securities fraud. In assessing witness credibility, the Court is guided by several factors such as:

     (1) the opportunity and ability to see or hear or know the things the witness testifies to;

     (2) the quality of the witness's understanding and memory;

     (3) the witness's manner while testifying;

     (4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

     (5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

     (6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

     (7) any other factors that bear on believability.

3d Cir. Model Civ. Jury Instructions § 1:7.

Mr. Yauch has thirty years of experience as a defense attorney and has worked with hundreds of clients. Mr. Yauch's testimony indicated how seriously he took this case and the incredible volume of evidence he reviewed and evaluated. He assembled a team which consisted of an investigator and a second lawyer. Mr. Yauch showed no animus towards Petitioner and, to the contrary, he exhibited palpable regret years later in Petitioner's unwavering insistence to go to trial, notwithstanding his repeated and clear advise that it was not in his interest to do so. His testimony was unambiguous that he talked to Petitioner about the proper elements that the government needed to prove to secure a securities fraud conviction.

After analyzing the relevant credibility factors, and having had the ability to observe both Petitioner and Mr. Yauch at the evidentiary hearing, the Court finds Mr. Yauch's testimony highly credible and accords his testimony great weight. Thus, for the following reasons, Petitioner fails to show that counsel's performance fell below an objective standard of reasonableness with respect to Claim I.

The review and discussion of the elements of a charged criminal offense with a client is a foundational, rudimentary function of a defendant's attorney. The notion that a highly experienced and dedicated attorney like Mr. Yauch, on a case with such significant penal exposure to his client, after having assembled a team (including an investigator, co-counsel, and a number of expert consultants), after delving into thousands of pages of written discovery, and over a span of almost two years would have failed to review the elements of securities fraud with his client is near impossible to conjure. Mr. Yauch was adamant that he properly instructed Petitioner as to the elements of the charges, and that motive was not one of them. Petitioner's self-interested testimony on this point, on what may be his last chance to challenge his judgment of conviction, wreaks of implausibility. The court credits Mr. Yauch's testimony in this regard.

The court also notes that Judge Thompson's jury instructions were eminently clear that motive was not an element the government needed to prove for a securities fraud conviction.

First, Judge Thompson recited the elements the government needed to prove for the jury to find Petitioner guilty of the securities fraud charge; more specifically, Judge Thompson instructed the jury as follows:

> [F]our essential elements for Count 1 [securities fraud], all right?
> One, that the defendant knowingly did one of the following as
> detailed in the description of Count 1 of the indictment.  Employed
> any device, scheme or artifice to defraud or made any untrue
> statement of a material fact or omitted to state a material fact
> necessary in order to make the statements not misleading in light of

the circumstances under which they were made or engage in a transaction, practice or course of business which operated or would operate as a fraud and deceit on a person. Any one of the three is sufficient but the jury must be unanimous as to which one of the three it was.

Two, moving on now to Element Number 2. We did Element Number 1. Now we're going to Element 2. Defendant did so in connection with the purchase or sale of the securities described in Count 1.

Three, in connection with this purchase or sale defendant made use of or caused the use of any means or instrumentality of interstate commerce or of the mails.

And four, the fourth essential element, defendant acted knowingly, willfully and with the intent to defraud.

Crim. No. 17-228 ECF No. 87 at 27-28. Subsequently, Judge Thompson explicitly noted that motive was not an element of the offenses charged. Indeed, she instructed the jury as follows:

Now, motive is not an element of the offense with which the defendant is charged. Proof of bad motive – I think that heading is supposed to be motive explained. I'm just going to write that in, motive explained at the header.

Proof of bad motive is not required to convict that the defendant is guilty and proof of good motive alone does not establish that the defendant is not guilty. Evidence of the defendant's motive, however, may help you find the defendant's intent. Intent and motive, however, are different concepts. Motive is what prompts a person to act. Intent refers to the state of mind with which the particular act is done. Personal advancement and financial gain, for instance, are motives for much of human contact. However, these motives may prompt one person to intentionally do something perfectly acceptable while prompting another person to intentionally do an act that is a crime.

Now, let's define willfully. What does willfully mean? The offense of securities fraud charged in the indictment requires that the Government prove that the defendant acted willfully with respect to an element of the offense. This means the Government must prove beyond a reasonable doubt that the defendant knew his conduct was unlawful and intended to do something that the law forbids. That is, to find that the defendant acted willfully, you must find that the

evidence prove beyond a reasonable doubt that the defendant acted with a purpose to disobey or disregard the law.

Willfully does not, however, require proof that the defendant any evil motive or bad purpose other than the purpose to disobey or disregard the law. Willfully does not require proof that the actor of the existence and meaning of the statute making his conduct criminal.

*See* Crim. No. 17-228 ECF 87 at 43-45.

Judge Thompson's instructions were clear. Motive was not an element of the securities fraud charge. Had Mr. Yauch improperly instructed Petitioner or thought that motive was an element of the securities fraud charge as Petitioner claims, it makes logical sense that an objection would have been made to Judge Thompson's jury instructions on motive. No objection was made. This lends further credence to Mr. Yauch's, as opposed to Petitioner's, version of events. Petitioner was properly advised of the elements of securities fraud. It did not include a motive element.

Therefore, the Court finds Mr. Yauch's representation of Petitioner did not fall below an objective standard of reasonableness. Thus, Claim I is denied.[3]

2. Claim II – Ineffective Assistance of Counsel for Failing to Present a Defense to Wire Fraud Counts

In Claim II, Petitioner asserts that counsel failed to provide a defense to the three wire fraud counts against him at trial. Petitioner did not present any witnesses at trial. Mr. Yauch filed pre-trial motions, cross-examined witnesses, moved for a judgment of acquittal, and otherwise argued extensively on Petitioner's behalf during opening and closing arguments.

Initially, the Court notes that Petitioner has come forward with no witnesses that Mr. Yauch should have called on his behalf to testify at trial. In *Duncan v. Morton*, 256 F.3d 189, 202 (3d

---

[3] Given that Mr. Yauch's performance did not fall below an objective standard of reasonableness as to Claim I, the Court need not address whether Petitioner has shown *Strickland* prejudice.

Cir. 2001), the Third Circuit found that a habeas petitioner's failure to present any sworn testimony by the witnesses the habeas petitioner claimed counsel should have investigated and called as a witness amounted to a failure to establish *Strickland* prejudice. In the § 2255 context, other courts have similarly found that a petitioner needs to provide a sworn statement of fact from the proposed witness regarding what they would have testified to if a § 2255 petitioner is to establish *Strickland* prejudice. *See Huggins v. United States*, 69 F. Supp. 3d 430, 446 (D. Del. 2014) (noting that movant did not provide an affidavit from the witness stating that he would have been available to testify and or describing his potential testimony); *Karamos v. United States*, No. 04-0171, 2005 WL 2777552, at *4 (D.N.J. Oct. 24, 2005) ("[T]he Court cannot conclude that Petitioner was prejudiced by counsel's failure to investigate or call these individuals as witnesses because Petitioner has failed to provide a sworn statement of facts from any of the seventeen detailing their proposed testimony.").

Given Petitioner's failure to come forward with any witness statements, the fact that Mr. Yauch did not call any witnesses does not, in and of itself, constitute ineffective assistance of counsel under the relevant *Strickland* standard. Furthermore, the Court has reviewed the record, particularly the closing arguments by Mr. Yauch. Mr. Yauch strenuously argued that Petitioner lacked criminal intent to be found guilty. *See* Crim. No. 17-228 ECF No. 88 at 56-78. Petitioner's conclusory statement that counsel did not provide a defense is belied by the record in this case. Accordingly, Claim II is denied as Petitioner fails to show that Mr. Yauch performed ineffectively and/or failed to show prejudice by not defending him on the wire fraud counts.[4]

---

[4] While certainly not controlling to the Court's disposition on Claim II, it is at least worth noting that Judge Thompson stated at the close of trial that the attorneys maintained a high level of professionalism throughout. *See* Crim. No. 17-228 ECF No. 89 at 5.

## V.     CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citation omitted).  Applying this standard, the Court will deny Petitioner a certificate of appealability.

## VI.    CONCLUSION

For the reasons stated above, Petitioner's § 2255 motion is denied and a certificate of appealability shall not issue.  An appropriate order will be entered.[5]


DATED:  April 25, 2024

ROBERT KIRSCH
United States District Judge

---

[5] The Court expresses its appreciation to Mr. Michael A. Armstrong, Esq., for representing Petitioner at the February 29, 2024 evidentiary hearing.